Sept. 1839.

The Bank of
Monroe
v.
Strong and
others.

## THE BANK OF MONROE *vs.* STRONG and others.

An intention to commit usury will not avoid a contract, unless the loan actually made is accompanied by a corrupt agreement to take more than the legal rate of interest, particularly if the interest actually reserved does not exceed the legal rate of interest.

An usurious contract may be abandoned by the mutual consent of both parties, when the security is destroyed or cancelled, so that it can never be made the foundation of an action ; and in such case a new promise by the borrower to pay the amount borrowed with lawful interest, will be binding ; but to make such new promise valid and binding, the abandonment of the usurious contract must be made with the full knowledge of both parties as to the precise situation of the usurious contract, and of the facts which are alleged to constitute its abandonment.

THE facts in this case will sufficiently appear in the following opinion.

*A. Sampson,* for complainants.

*J. W. Gilbert,* for defendant Strong.

THE VICE CHANCELLOR. The pleadings and proofs in this case present substantially the following case :

On the 10th of April, 1836, the defendants, Joseph Strong and wife, executed a bond and mortgage to the complainants, conditioned to pay the complainants all sums of money which Strong then owed or thereafter might owe to the complainants, by reason of any notes or bills discounted for said Strong or for his benefit, or on which he might be drawer or endorser, or for the payment of which bills or notes he might be in any manner liable.

At the time of the execution of this mortgage, the firm of Strongs & Williams, of which firm the defend-

ant, J. Strong, was a member, owed the complainants a note of $13,443 71, dated Dec. 29, 1835, payable on demand with interest, which note was unpaid at the time of executing the mortgage.

The complainants insisted upon the payment of this note, and refused to make a discount for the defendant Strong to enable him to pay it. A. M. Schermerhorn, the president of the Bank of Monroe, however, made an arrangement with Strong to receive his note payable in New-York, and send it down to New-York to be sold, and to allow on behalf of the bank the proceeds of such sale. Strong executed his note for $12,000, dated Oct. 4, 1836, payable to the order of the cashier of the Bank of Monroe, in New-York, four months after date, collateral to which was the foregoing bond and mortgage.

Schermerhorn received this note, and on the same day (Oct. 4th, 1836,) Strong was credited in the books of the bank with the sum of $11,400, as an advance upon said note, but the note was not discounted by the bank at that time; but with the amount thus credited and other funds, Strong paid up the former note of $13,443 71. This second note of $12,000 was endorsed by the cashier of the Bank of Monroe to Schermerhorn without recourse, and by Schermerhorn endorsed to Prime, Ward, King & Co. and, with other notes, was sent by the cashier to Prime, Ward, King & Co. in New-York, to be discounted or sold, and the proceeds to be credited to the Bank of Monroe. P. W. K. & Co. did not at this time discount or sell the note. On the 31st day of Dec. 1836, the cashier again wrote to P. W. K. & Co. requesting them to discount this

and other notes, which they did on the 6th January, 1837, at 6 per cent. and the proceeds were credited to the Bank of Monroe. On the 7th Feb. 1837, the note was protested; and on the 8th February, P. W. K. & Co. returned the note to the bank, and charged their account with $12,001, 50, the amount of the note and protest. This letter was received by the bank on 13th February, 1837. On that day Strong was credited in the books of the bank with the sum of $324 53, to make the original proceeds of the note equal to a seven per cent. discount. The calculation upon which this credit was made, was as follows:

Interest on $11,400 from Oct. 4, 1836, to
    Feb. 7, 1837,                         275 47
Amount advanced Oct. 4, 1836,      11,400 00
Amount credited Strong Feb. 13, 1837,   324 53
                                   ───────────
                                   $12,000 00

and the bank assumed the note.

It does not appear from any direct evidence, that Strong knew of this credit of $324 53, but he had drawn it out; and on the 3d March afterwards, his account was over-drawn more than $500.

All these transactions in relation to the $12,000 note, also went through a special account of Schermerhorn's, but it does not seem material to trace it.

On the 8th of March, 1837, Strong executed his note to the bank for $12,000, payable on the 28th March, the proceeds of which were carried to his credit; and on the same day he paid the first $12,000 note and interest.

On the 8th of April, 1837, Strong executed to the bank his note for $12,000, payable sixty-one days

after date, the proceeds of which were placed to his credit; and on the same day he paid the note of 8th March, with interest.

The complainants file their bill for the foreclosure of the mortgage to collect the amount of this last note, and the defendant Strong, in his answer, sets up a defence of usury.

The complainants waive any right of going back, under their bill, to the consideration of the first $12,-000 note, as a foundation of a right to recover upon such consideration.

It is apparent that the three $12,000 notes are renewals, i. e. the two last are renewals of the first. The usury, if any, is in the first note; and if there is a taint of usury in that note, unless the usurious contract has been mutually and with the knowledge and approval of both parties, abandoned, the complainants must fail here. It is to be granted further, that the knowledge of Schermerhorn, the president of the bank, is the knowledge of the corporation itself; so that if there was any usury in the transaction with Schermerhorn, this knowledge is in legal inference brought home to the bank who are complainants here, and they must be affected by it and be subject to all legal consequences of such knowledge.

The first and indeed the most material point is, whether there was usury in the transaction connected with the note of Oct. 4th, 1836.

In the Bank of Utica *vs.* Wager, 2 Cowen, 763, Chief Justice Savage says: "To determine whether a contract is usurious, we must inquire,

"1. Whether the subject of the contract is a loan;

"2. Whether more than lawful interest has been received or taken; and,

"3. Whether it is the effect of a corrupt agree-ment."

Assuming these inquiries as pointing out truly the elements of an usurious contract, how fairly do the facts before us bring this case within the principles of these queries? The contract between Strong and Schermerhorn was not a loan. The idea of a loan was expressly repudiated, and Strong was given positively to understand that the bank would on no account or on any terms extend to him a loan. Schermerhorn consented to be Strong's agent to raise a loan for him, and even personally to endorse his paper; and upon being furnished with the proper paper, did advance to him the sum of $11,400; but this was not the consideration which he paid for the note—it was understood that Strong should eventually receive the whole proceeds for which the note might be sold. Schermerhorn, or the bank, had a right to hold the note as security for the advance of $11,400 with the interest, thereon from the time of the advance—as between Schermerhorn and Strong there was no agreement express or implied, for any thing beyond this, or for any usurious interest whatever. If the note had not been negotiated, Schermerhorn could never have recovered upon it beyond the $11,400 and interest; as between Schermerhorn and Strong there seems to have been no contract for a loan, unless the advance upon the note should be deemed such, and even this was not made upon any corrupt agreement, or any agreement for the payment of more than the legal rate of interest. It is true that the note was executed by Strong and received by Schermerhorn as his agent, with the belief on the part of both, that it would be necessary to raise mo-

ney upon it at a usurious rate of interest. But this belief or understanding did not apply to any transaction or contemplated transaction between Schermerhorn and Strong, as to any money to be advanced or paid by the former to the latter; but it applied only to an eventual or anticipated transaction to be made by Schermerhorn for and on behalf of Strong with some third party. It is needless to inquire what would have been the effect of the whole negotiation, if the note had been transferred at an usurious rate of interest, as was evidently contemplated by both parties. It is sufficient that no such usurious transfer was ever made. It will hardly be contended that a mere willingness on the part of Strong to borrow money upon usury, without any act done to carry out that intent, will of itself vitiate the paper. An intention must be accompanied by an act to bring it within the scope and force of the statute; as to constitute usury there must be a taking of usurious interest, coupled with a corrupt agreement so to do.

In this case the facts do not show any corrupt agreement as between Strong and Schermerhorn, nor do they show the actual taking or receiving more than lawful interest; neither do they convey to the mind any evidence that the transaction was resorted to as a shift or device to evade the statute of usury, by means of which Schermerhorn or the bank could take or receive more than lawful interest.

The note was finally cashed by Prime, Ward & King at a legal rate of interest—the balance due to Strong, computing the account between him and the bank at 7 per cent. was carried to Strong's credit in the books of the bank. This should, indeed, have been done by the bank when they received informa-

11

tion that the note was cashed below ; but I cannot think that the delay in giving this credit until the note was protested, will vitiate the note in the hands of the bank. By virtue of the first advance, the bank held the note as security for $11,400 and interest ; by the last credit to Strong, the bank held the note for the whole amount as against him, especially as Strong drew out the whole amount of the last credit previous to the renewal of the note. Upon the renewal of the note on the 8th of March, it is a matter of almost irresistible presumption that Strong at that time knew of the credit which had been carried to his account, and was thus informed of the state of the account as to the first note, the propriety of which was sanctioned by such renewal, at least so far as to induce us to infer that the account was made up and stated according to the original understanding at the time of executing the first note. So far, the renewal may lead us to infer as a legitimate corollary from Strong's acts, that there was no corrupt agreement as between Strong and Schermerhorn, at the time of the execution of the first note. I shall hold, therefore, that under the circumstances, the first note was *not* tainted with usury.

It was urged by the complainants that if the first note was usurious, Strong, by executing the second note confessedly only for the amount actually advanced on the first note with legal interest, and the first note being cancelled, the usury was waived ; and the second note being only for a sum equitably due, would at any rate be good. It seems to be settled that if an usurious contract is mutually abandoned, and the security is cancelled or destroyed so that it can never be made the foundation of an action, and the bor-

rower subsequently promises to pay the amount actually received by him, such promise is legal and binding. But I apprehend that to bring a case within this rule, the usurious contract must be mutually abandoned, with a full knowledge in both parties of the precise situation of such contract, that the borrower, after knowing all the facts precisely as they are, must give such new security to make it legal. In this case, though the inference is almost irresistible that Strong knew the whole state of facts when he executed the second note, yet knowledge of it is not brought home to him by positive proof; and I should consider that an essential ingredient before I could declare the execution of a second obligation a waiver of usury in a prior one. If the complainants had secretly and designedly credited Strong with $324 53 without his knowledge, and Strong had executed the second note in actual ignorance of such credit, it is clear that such second note would be no waiver of usury in the first; and for this purpose I deem positive and clear proof of knowledge essential, while for other purposes the strong inference arising from the facts may be sufficient.

This ground taken by the complainants I deem untenable, but I hold that there is nothing in the original transaction which will vitiate the note of 4th October for usury. As there is no pretence that there is any usury in either of the subsequent notes unless they received their taint from the first, the complainants must recover the amount of the note of 8th April. It must be referred to a Master to ascertain and compute the amount due to the complainants from the defendant Strong, upon the note mentioned in the pleadings bearing date April 8, 1837, which

Sept. 1839.

is secured by the mortgage set forth in the pleadings. The Master must also ascertain and compute the amount due from the defendant Strong to the defendant Williams upon the mortgage set up in Williams' answer, and which is prior in point of time to the mortgage of the complainants.

All further questions reserved until the coming in of such report.

NOTE. The decision in this cause was affirmed on appeal to the Chancellor.